Case number 11-1189 et al. Echo Services Operations LLC Petitioner v. Environmental Protection Agency Issues raised in Final Opening Brief of Environmental Petitioners Mr. Johnson for Environmental Petitioners Mr. Rave for Respondent EPA Mr. Green for Industry Intervenor Respondents Issues raised in Final Joint Brief of Industry Petitioners Mr. Bell for Industry Petitioners Mr. Knight for NACWA Mr. Rave for Respondent EPA and Mr. Johnson for Environmental Intervenor Respondents Good morning Good morning May it please the Court Seth Johnson for Environmental Petitioners The keyword in RCRA's definition of solid waste is discarded and this Court has already held and reaffirmed that the word discarded unambiguously has a plain meaning of thrown out, abandoned, or disposed of The overarching problem here is that EPA is taking materials that have been thrown out and calling them not discarded There are two broad ways it's done this The first one I'll talk about is that it's simply deemed scrap tires, used motor oil, demolition debris, and unrecyclable remnants of used cardboard non-waste This violates the plain text of RCRA as this Court's interpreted it EPA agrees with the case law that a material is waste if it's initially discarded But it claims these materials aren't discarded even though they're all thrown out by consumers before they make their way to be burned In fact, people usually pay to properly dispose of their tires and demolition debris People just abandon their used motor oil at service stations and people leave used cardboard at the curb like regular old garbage They're all post-consumer wastes that are thrown out, disposed of, or abandoned But eventually used in fuels Eventually, some of them get burned productively But the Court's case law has held that a material once it's been thrown out is discarded and it's discarded all through that process and EPA agrees with this It says that at JA 124 The problem here with these materials is it's just saying that the initial user did not discard them and that's insupportable because the initial user threw them out in the ordinary sense of the term which is controlling under AMC 1 and ABR Would that be true of... I mean, suppose it was indisputably true that this discarded material was in fact used as... Would your view be the same? If it was thrown out by a consumer, yes So does your argument turn on whether it's thrown out by a consumer versus waste that's generated by a manufacturer and then they're reusing it? We did not challenge that exemption the exemption where a manufacturer generates a byproduct and then reprocesses it into its manufacturing process We're challenging when somebody indisputably clearly throws it out in the ordinary sense of the term Suppose you take your oil down to the Jiffy Lube and you say, I'm buying some new oil from you Would you take my old oil and make sure it gets put into the recycling stream for use as a fuel? That wouldn't be thrown out, would it? That would be, that's just like... Anytime you let go of something, it's thrown out? Not anytime You give it to your brother, it's discarded then? Not if you give it to your brother Why is it discarded then if you give it to the oil dealer and say, you take it Because in that case you're not treating it like a valuable commodity that's no different from taking paper and putting it in recycling Why is it not treating it like a value properly valued commodity if you say, I'm buying some new oil from you you're getting my old oil now you take it and do the right thing and get it into the use as a fuel You're not getting anything in return You're just throwing it out You said a while ago if you gave it to my brother it wouldn't be discarded If he's going to use it in a valuable way Suppose he's going to take it and use it as a fuel If he's going to take it and use it as a fuel Would that be discarded then? I say, look, you're up there you got your car up on the jack why don't you put mine up you can't do oil for me Take my oil and put it like you're going to do yours into the fuel Would that be discarded then? Yes It would? That's no different from the ordinary use of the word Certainly there are senses in which Sorry Once there are senses in which it's ambiguous in that meaning This court has held that the word discarded unambiguously has its plain meaning Your Honor, the examples you're giving me We haven't necessarily held that these examples fall within that plain meaning however, have we? No, but there's never been a case holding that post-consumer waste that goes from the consumer to another entity and then eventually winds up being burned There's never been a case that holds that that's not waste and that's not consistent with the ordinary meaning of the word discarded Which provision of the regulation are you focusing on right now? We're focusing on Which one is it? It's the exemption for scrap tires It's parts of the traditional fuels definition where EPA said that clean demolition wood waste and used motor oil are not wastes So those are the ones we're focusing on And for some of these materials EPA and its lawyers claim that the concept of discard is irrelevant And that argument just can't have any purchase under RCRA In RCRA, the concept of discard isn't just relevant It's the key to the statute EPA says that discard is irrelevant because clean demolition debris and on spec motor oil are produced to be used as fuel But that's insupportable People produce demolition debris when they build and tear down buildings They produce used motor oil when they change their oil They're not being produced for use as fuel Doesn't for the wood and oil that you're talking about Doesn't it still have to meet the legitimacy criteria? It does But the legitimacy criteria can't override the plain meaning of discard Well, let's assume we're not convinced that discard is quite as clear as you think it is Let's just assume we think that there's enough ambiguity in the term to accommodate the agency's view about this Don't the legitimacy Would you then Then what would you say? The legitimacy criteria would protect them, wouldn't they? Sorry It would protect in certain instances but we've raised challenges to the legitimacy criteria In your briefs? I know you don't like them but I couldn't really find any specifics about that We challenged them as arbitrary and capricious and unlawful Yeah, but why? Well, for one the contaminant criteria doesn't look at contaminants that are relevant to the concept of discard And the containment criteria isn't related doesn't do any work in showing that the material is more like a valuable commodity than a waste Okay, so you have a two-part argument, right? Well Discard means discard This isn't discarded And even if it has some space some flexibility in it the legitimacy criteria aren't sufficient We do And on the discarded point I'd also point out that our argument also relies on the Clean Air Act because EPA's broad exclusion of tires and used oil unlawfully overrides text in the Clean Air Act And this matters because Congress Which provision is that? It's in section 7429G1B Yeah, which says what? Well, there Congress established a narrow exclusion for a certain set of units that burn used oil and tires EPA's broad exclusion of tires and used oil from being wastes at all allows any unit to burn those materials without being considered a solid waste incineration unit And then they're not subject to the highly protective air emission standards that Congress required Congress recognized that waste could be burned and could be burned productively but it required that waste burning be subject to protective air emission standards because the burning of waste releases harmful toxins And by allowing any unit to burn waste without being subject to those standards EPA is overriding Congress's policy choice and it's rendering the text of that exclusion superfluous And when we raised this in comments EPA simply said that it didn't think this part of the Clean Air Act was relevant and it refused to consider it And that's unlawful because EPA has to interpret these related statutes together And that's especially the case because Congress made close textual ties between them EPA's lawyers tried to defend the tire and used oil exceptions by claiming EPA has authority to expand the statutory exclusion and by relying on legislative history But the NRDC case has already rejected exactly those lines of argument I'd like to move on to the second question The second broad way that this is illegal which is the processing exemption which allows discarded things to become not discarded so long as they're physically or chemically processed and then eventually get burned as fuel This processing exemption also violates this court's case law RCRA and the Clean Air Act Three times this court has made clear that a waste remains waste when it's processed for use as fuel Used oil recyclers collect waste oil from service stations They process it and they sell it This court has held that the processed used oil is waste under RCRA when it's sold for use as fuel It's unchanged and must still waste afterward when it's burned in energy as it lasts recovered The Clean Air Act confirms that the processing exemption is illegal Congress excluded certain units burning tires and used oil as I said from being solid waste incineration units But it expressly refused to extend that exclusion to units burning refuse-derived fuel And EPA's lawyers claim that refuse-derived fuel is only fuel derived from municipal solid waste We disagree with that But even if they're right the processing exemption is still unlawful Can I just have a big picture question for you? Sure Are you basically questioning the statute's balancing of discard versus recycling? I mean is it your position that there shouldn't be any recycling? No, certainly not But our position is that Congress thought that there should be energy recovery from solid waste Yeah But when there's energy recovery from solid waste it needs to be subject to protective air emission standards Right And when you're recovering In a legitimate if in a situation where a material is used properly for fuel isn't the burning of that fuel subject to emission standards? They're not nearly as protective emission standards So your theory is then that it's okay to have I'm not just asking your policy view here that however it's disposed of whether it's simply burned or whether it's used in fuel it should be subject to the same strict emission standards That's how Congress set up RCRA and the Clean Air Act When you're recovering energy from waste you recover it by burning it If you process the waste so that it burns better you're not you haven't recovered the energy yet You only get the energy when you burn the waste So processing the waste is just a step in the overall recovery process This is just like what the court held three times in AMC 1 API 1 and ABR that when when waste motor oil is collected from service stations where it's been discarded, this court has held and it's processed and then it's sold for use as fuel All through that process it remains discarded and subject to EPA's jurisdiction to regulate as a discarded material And Of course we did say in AMC in one of these AMC cases that the term discard was ambiguous And in ABR the court said that that case couldn't overrule AMC 1's clear holding And in API 2 the court reiterated that the term discarded unambiguously has its plain meaning of thrown out abandoned or disposed of If a material is thrown out abandoned or disposed of it has to be treated as waste and it has to be treated as waste from soup to nuts until energy or a material product is disposed of And if the court has no further questions No Okay Thank you Good morning your honors Norman Ray    representing EPA with me at council table is Alan Karpian from EPA's Office of Justice Good morning your honors Norman Ray from the Department of Justice and the Department of Justice General Council In this case the EPA defined criteria for determining which materials are non-hazardous secondary materials are solid waste when burned as a fuel and which are not and they use the same criteria that the court found reasonable in the safe food and fertilizer case when the court found that a hazardous waste could be of the level of contaminants compatible with the use as a fuel. In applying that criteria EPA in some cases articulated the legitimacy criteria and stated that materials that met them under certain criteria were not solid waste. Now, petitioner's primary argument is that this court has repeatedly recognized that materials can be recycled even in a hazardous waste context. Safe foods is certainly one in the AMC case. In the association of battery recycling case, the court stated that secondary materials destined for recycling are obviously not disposed of from the way API 2. The court has repeatedly recognized that materials that are in some kind of recycling process than materials that are being thrown away. And that's why the petitioner is arguing that at least with respect to scrap tires and used oil, there's a difference here because it's a consumer  essentially discarding those materials in the ordinary sense. And it's very different from the cases that you're citing. And   has repeatedly argued that it's a false distinction. First of all, there's nothing in the statute that distinguishes between something that consumers handle versus something that industrial process uses. And secondly, this distinction, what they postulate as a two-step process that the consumer disposes of something and then it gets used is false. That's not the way it works. It's actually a single process. If you go to take your car in to get new tires, they take the tires off and it immediately goes into this system for reuse of the tires. Systems that are run by states. And the termination is limited to tires that are recycled under state tire reuse programs. The same with used oil. If you go and have your oil removed and changed, it goes directly into the recycling program. It's not a two-step process. It's a single process. The material never stops being a product. What about tires that on Earth Day are fished out of the Anacostia River or other places and stacked up and sent some place for recycling? Those tires are not included within the determination. Tires removed from tire piles, tires that are pulled out of the river, tires that have undeniably been previously discarded by being thrown in the river are not included. They can be processed. If they meet the requirements for processing and meet the criteria, which is the way the enormous tire piles that we used to have that have been removed  Anacostia River, the determination in the rule that used tires managed under state tire recycling program doesn't apply to those kind of tires. It only applies to tires that certainly never leave the realm of commerce. They go immediately from being used on a vehicle to being put into the chain to be produced into fuel. The same is true of used oil. The statute has a specific program for regulating used oil. EPA has a specific definition in the statute and in the regulations and under those regulations EPA developed criteria for distinguishing between used and non-used oil. It is not subject to further regulation. Your response to Mr. Johnson's argument is that these are not discarded. Your response to the petitioner's argument is that these are not discarded. It is not exactly the same as the situation in AMC 1 where the court was looking at a continuous manufacturing process, but it is the same idea. These materials from the point, never thrown away, never discarded. They go right from the  The petitioner was not considering whether used oil was a solid waste and particularly was not considering whether used oil that is found to be on specification by used oil recyclers was a product. It simply was citing to refer to an argument that EPA had made that these oil provisions in AMC 1 EPA had argued that materials essentially an argument much like what petitioners are making here that once a material was no longer being used for its original purpose and these were materials produced in the mineral processing industry and materials that were produced at petroleum refineries EPA had said these materials are solid waste even though the manufacturer was putting them back into the process. And the court said no. That's taking it too far that we're not quite sure what else the statute might mean but clearly these           are     being used for petroleum refineries. Thank you. Mr. Green? Good morning. I'm Douglas Green, council for industry interveners on behalf of EPA. The petitioner's argument is flawed because as I think it basically doesn't consider and is directly at odds with one of the objectives which is avoiding the needless land disposal of waste which can otherwise be used for energy value. Now as this court advised in AMC 1 the term discard must be determined by the purposes of the particular legislation and therefore the term discard in this case as in that case should not be construed in a manner that is inconsistent with the goal of promoting the conversion of solid waste to usable energy. EPA's rule is faithful to that objective. Now what the agency has done here with qualified secondary materials is that it can't discern what the intent of million consumers are with post-consumer products with used oil or scrap tires. What the agency has done however is that it has stepped back and asked in these qualified secondary materials to ensure one, that the materials are in fact handled like commodities, two, do they in fact have heating value, and three, are they in fact comparable to the virgin fuels that they are going to use. So if secondary materials are collected in programs outside of these type of qualified conditions, then discard may in fact be going on, but not in these circumstances. And as EPA correctly argues, this really isn't different than this Court's decision in safe food and fertilizer, which involved a hazardous secondary material. Our concern with petitioner's position is that it really will reverse years of successful recycling programs that, as EPA just explained, have actually been solving the problem. Scrap tire collection programs, used oil recycling programs, are programs that have taken secondary materials that historically were part of the solid waste disposal problem, were being disposed of, and have been collected and managed in accordance with a defined set of circumstances. The practical effect... What about petitioner's argument that all of that occurs pursuant to inadequate emission standards? Excuse me, Your Honor? Their argument is that all of that occurs pursuant to what they view as inadequate protective emission standards. Isn't that their argument? If that's their argument, then that's something that has to be addressed under the Clean Air Act. This issue, the issue here, is whether these materials, when collected and managed in the specified set of conditions set forth by EPA, are discarded. And EPA has correctly determined, consistent with checking human health and the environment, but also promoting the statute's policy objective of avoiding the needless land disposal of secondary materials that can be used for their energy value, has said in this case these aren't discarded. If, when burned under any applicable Clean Air Act regulations, petitioners have concerns with those regulations, that's where they ought to be looking, not under RCRA, where the agency's authority is to determine whether discard has occurred. Our concern is that what will happen here is that these recycling programs will be reversed. The bottom line is, as even EPA's record shows, is that if these materials are all of a sudden, if we wave a magic wand over these fuel products and call them the solid waste and you can only combust those in an incinerator, guess what's going to happen? They aren't going to be combusted for energy recovery. EPA's own record shows that once a unit is called an incinerator, for a host of reasons, those units stop burning the material that caused them to become incinerators and look to alternative methods of basically virgin fuels and that would be inconsistent when we submit to the policy objectives of record. I see my time is up. Okay, thank you. Did Mr. Johnson have any time left? You can take two minutes if you'd like it. I would. Go ahead. So first, EPA relies on collection, but household waste is collected just like tires are collected, just like used oil is collected. EPA's arguments would apply to regular household waste and make that undiscarded. And that's just not a tenable reading of the statute. Well, just focus on the last argument both lawyers made with respect to the purpose of RCRA. And what effect on the recovery aspect of RCRA would occur if you were to prevail? What's your response to that? The general purposes of RCRA have to yield in face of the text of the statutes. And the text of the two statutes taken together says that if a material is discarded in its unambiguous sense of the word, if it's been thrown out, abandoned, or disposed of, then it must be subject to these protective air emission standards. And EPA is letting sources burn these materials without being subject to these protective air emission standards. ILCO, I want to jump back to the collection and continuous process argument. The ILCO case from the 11th circuit, which this court cited approvingly in API 2 and which also relied on this court's case law, pointed out that previously discarded material remains waste, even though it may be recycled. EPA relies on safe food, but safe food was a very different circumstance. That was a firm-to-firm transfer where people actually bought and sold for money. People who held the hazardous secondary material there actually sold it for money to the reprocessors. So that's just not the point. If you don't get money for it, then it's discarded. If you don't get money for it and you don't hold it like a valuable commodity? No, not like a valuable commodity. It's being transferred. If you don't get money for it, then it's discarded. No matter what other factors are involved? No, the test is if it's being thrown out, whether you don't get money. We're trying to get whether it meets the test or not. No, I understand that. Listen to what I'm asking. Is the test, when it's transferred, if it's  thrown out, is a highly significant factor in the test? It's not necessarily dispositive. So if it's not dispositive, then it would be possible for the transfer to occur without monetary consideration and still not be a discard? There may be circumstances where that's possible, but that's a discard. If you give a tire as         as a gift, that would not be a discard. So if you give a tire as a gift, that would not be a discard. I think it's clear that in the circumstances of this case, that there's not a discard, and EPA's broad exemption wraps those tires into being not discarded. As a result, the whole exemption has to fall under this court's case law. If EPA wants to try to expand the exclusion to new units, EPA admits that it's expanding the exclusion to new units, units that the Congress did not allow to be not ... Sorry. There's a lot of nots in that sentence. It was actually knotty. EPA admitted that it is expanding the exclusion in section 7429G1B beyond what Congress provided. This court's already held in NRDC that that's not permissible. Okay. Thank you. All right. So let's go on to the second industry challenge. Am I at the right point? Okay. All right. And Mr. Bell and Mr. Knight are going to split this argument, right? Okay. Let's go. Good morning. May it please the court. My name is Chris Bell and I'm speaking for the industry petitioners on the third-party transfer issue. And let me begin with how we believe the rule should be changed. Looking at the regulatory language. To win your case, you need to start with a statute and why the current rule is not faithful to it. You may have a much better view about how it should be changed, but you're only going to win if you can convince us that the agency's interpretation of the statute is not acceptable. So maybe you want to start there. Certainly, your honor. This issue turns on the meaning of other issues.     to understand that some of the things that are required to be used as fuels are discards. And in the context of their rule, EPA has said that if I'm an onsite generator, say if I'm a facility and I have some kind of a hydrocarbon type of a stream, and I burn it onsite in my boiler as a fuel, and I meet the four legitimacy criteria, valuable commodity and all that, that is not a discard. If part of that same material I pipe over to my neighbor's facility for the exact same use, that the solely the act of the transfer transforms that exact same activity into a discard. I thought it was not a discard if it was processed in accordance with the legitimacy criteria. Isn't that true? If it's processed in accordance with the legitimacy criteria. You raise a good point, your honor. I was just looking at the regulation. Right. But if it is processed and then transferred, in that situation, the material is already considered discarded. So for that part of the rule, EPA has said, if you discard something, then process it, then transfer it, then that is not a discard. On the other hand, if I have something that meets all of the legitimacy criteria but does not need processing, which, by the way, is frequently the case in sort of big interconnected petrochemical type facilities where you have pipes connecting various kinds of production units, if there is no  processing required... Could you step back? Yes, sir. Could you just give us an example, just a very specific example of the problem you're identifying? Okay. Okay. Just one clear example. Okay. One clear example is in a petrochemical facility, when they're processing those kinds of materials, they get a wide variety of what are called hydrocarbon streams that are not the primary product but can have a variety of values. They can have a value as an ingredient into some other production unit or... Well, if that's in the generator's  then it won't have a problem, right? Correct. It's only if it's transferred. So I asked for an example of a situation where a generator produces a hydrocarbon, that's what you're talking about, right? Right. And that hydrocarbon is transferred to someone else and used in a fuel, right? Correct. Okay, so that has to be consistent with the legitimacy criteria, right? Correct. And then it's not considered a discard. So what's your problem with that? If I have that hydrocarbon pipe go to my boiler, it's not a problem. If I have too much of that material and so I sell it to my neighbor's     don't think that's a problem with the EPA's rules. So what in the statute, I mean, the distinction the agency is making seems so intuitive. Stricter standards if the transfer is to a third party. So you have to show us something in the statute that says the plain meaning of the word discard is abandon, throw away or dispose. And our position is that particularly in a market economy transferring or selling something in plain language is not throwing away, disposing. But the agency says it's not a discard if it's reprocessed in some form in accordance with the legitimacy criteria. If it isn't, then they're going to treat it as discarded. A, I don't see where you find anything in the language that prohibits that. And B, it just seems such an intuitive position to me. I guess our position is that as this court said in Safe Food and Fertilizer where it said that firm transfers are hardly a good indicia of a discard as that term is ordinarily understood. And we don't think that EPA has backed up its intuition with anything in the record. Because the way EPA has written the legitimacy criteria, the legitimacy criteria do not require processing. The legitimacy requirements are a completely separate issue from the issue of processing. Are you challenging the legitimacy criteria also? No, sir, we're not. We're saying that if you transfer something that meets the legitimacy criteria, we're not. You've got to make this argument through the lens that we have to look at the case. Either you're arguing that this violates the statute, which you are. Or my question was if we don't think this does violate the statute, are you challenging the legitimacy criteria? And you just said no. Do you see my point? You moved your argument to a challenge to the legitimacy criteria. I didn't see that in your brief. No, we are not challenging the legitimacy criteria. So your whole case hangs on discard, right? Correct. And we believe that  legitimacy criteria do not require reprocessing or processing the material. If a material meets the legitimacy criteria and it is, for example, burned on site without processing, that's not a discard. And so if I have a material that's perfectly useful as a fuel, is a valuable commodity, does not have unusual contaminants, has a meaningful heating value, in other words it doesn't need to be reprocessed, then it meets the legitimacy criteria. Then at that point EPA's position is that it meets the legitimacy criteria. The only thing that's different is the transfer. Would it be possible for you at that point to seek, petition the EPA for a determination that this is not in fact a discard? Yes, it would be possible, but we don't think that EPA has the authority under RCRA to require the regulated community to petition EPA regarding materials that are not discarded in the first instance. Well, at that point you would be asking them to determine that it should not be treated as a discarded material. Correct. If it were being processed they would have additional evidence of its non- discarded nature that they do not have if it's not processed. So why is it unreasonable or in violation of any of the statutes for them to say, well, you'll have to petition us for treatment as a non- discard if you want to use a transfer that isn't processed? Well, first, of course, if the material is processed then you wouldn't have to go to EPA at all. That's what I said. Correct. Well, I don't think you're understanding me by your response. I already said that if they have the evidence of process they have that evidence to indicate it's not discarded. If they don't have the evidence of process, why is it unreasonable for you to have to petition to establish that it's not discarded? Because we don't believe that a transfer by itself, as this court said in Safe Food and Fertilizers that, you know, where the court said firm-to-firm transfers are hardly good indicia of discard, and when we talk about the plain language of the word discard, throw away, dispose of, abandon, you know, we don't think that the word transfer, which are the economic transactions upon which the whole nation's economy is based, that those transfers by themselves are discards, and we don't think the record supports that as well. And EPA cannot base a rule simply based on, well, we believe that those might be a discard. They have to have a record that supports that, which is what this is.   believe that that is the record. Okay. Anything else? No. Okay. Thank you. Mr. Knight? Good morning. May it please the court. My name is Jeff Knight, and I will be addressing the sewage sludge exclusion on behalf of NAWQA and the other agencies.  I'm going to start with a statute with me. It says the term solid waste means sludge from a waste treatment plant. Is that what it says? The definition of sewage sludge, I'm sorry, the definition of solid waste. It says the term solid waste means any garbage refuge sludge from a waste treatment plant. Right? Yes. Okay. So I read that and I say that's solid waste. It includes all of those things except the following. And then it reads but does not include solid or dissolved material and domestic sewage. All right. So we have to make sense of both of those, right? Correct. So when it comes out of your house, it's sewage. When it comes out of the treatment plant, it's sludge. Isn't that what this statute means? No, we don't think so. Okay. Tell me why. So the definition of sludge in the statute is in 1004-26A. And that definition includes all types of sludge, including specifically sludge at a municipal wastewater treatment plant. So under your theory, what happens to the words sludge from a waste treatment plant? It is the definition that excludes certain wastewater flows, including all solid or dissolved material in domestic sewage. So this is a definitional exclusion from what is initially a broad inclusion of sludge from wastewater treatment plants generally. There are many types, industrial, commercial and municipal. But then the definition expressly excludes. Just tell me in very simple terms what sludge from a waste treatment plant under your theory would be included in the terms solid waste? An industrial plant, wastewater treatment plant. I'm sorry? A sludge from what? A waste treatment plant. So if a factory has a waste treatment plant, that would be included? So sludge from a waste treatment plant can include any type of waste treatment plant, whether it be municipal or it be commercial or industrial. But the same sentence, the definition of solid waste treatment plant, it specifically then focuses on, yes, domestic sewage, but it focuses on the solid or dissolved materials. I still don't understand what's left of this phrase under your theory. Well, the ordinary meaning of the word material includes everything of which something is composed. Just give me an example. What sludge from a waste treatment plant? Give me an example of sludge from a waste treatment plant that would, under your theory, be considered solid waste? Sludge from a factory. You just told me that waste treatment plants from, sludge from what? Sludge from a factory, for example, or an industrial facility, but not sludge from a municipal. Well, where does it say that in the statute? Well, it includes, it says, sludge from a waste treatment plant. It doesn't say sludge from a factory's waste treatment plant. But waste treatment plant is a broad category which includes multiple types and 26A, the term sludge, under 26A, means... And you think this is a Chevron 1 issue? It is. You think the statute is crystal clear? The statute is clear on this point. Really? This Court's precedent in cases like Goldstein v. SEC says even if Congress uses a term that is susceptible to multiple dictionary meanings, does not mean that term is the, that EPA may choose any of those terms in interpreting the statute. This Court and the agency still looks to the context. And what EPA has done here is said that the exclusion only applies for the water that comes into a treatment plant and that the exclusion only applies to the water that  the treatment plant.   has done is said  exclusion only applies to the water that comes into treatment plants. And his interpretation is that we don't use those water that come into treatment plants. And that is not the case factually. First,  factually correct that sewage sludge does not contain water that comes into the treatment plant. And that's not the case factually.   Please. Thank you. I think we are  As a plain language interpreter. Thank you, your honor. You and your colleagues decided to split your time. Let's see. EPA, Mr. Rafe. Let me quickly because I think we can address the sludge issue extremely quickly by looking at another statutory provision. Why do you have to go beyond the one I was quoting? Because there is one that makes it even clearer. Oh, really? Which is code site to this one is 42 USC 6903 26A. And this says, the term sludge means any solid, semi-solid, or liquid waste generated from a municipal, commercial, or industrial wastewater treatment plant. So the statute clearly includes sludge from a municipal wastewater treatment plant, which is a sewage plant, within the term sludge. Therefore, yes, the statute is certainly clear, but what is clear is that sludge from a municipal wastewater treatment plant is a solid waste, by definition. And it's not the same material as what's suspended, it's not material that's suspended or dissolved in wastewater. It's a separate, newly-generated material that is produced in the process of treating the solid waste. And it's, by definition, in the statute of a solid waste. Well, what does that exemption mean that your colleague was referring to in his argument? It means that, for instance, if you have an industrial wastewater that contains some  concentrations or something like that, RCRA does not regulate that wastewater. That wastewater is regulated under the Clean Water Act, which requires it to be treated to meet treatment standards that have discharged the effluent. So it's to avoid double regulation of the wastewater itself, not to  the sludge, not to exempt the sludge from regulation that results from that treatment. And that's, I think, the best way to reconcile the statute, which is trying to make absolutely clear that even though there may be constituents, perhaps even hazardous constituents, in wastewater, they would be regulated under the Clean Water Act and not the direct regulation. So it's a division of authority between the two statutes. Any other questions on the sludge issue? Let me turn then to the transfer issue. First of all, again, as in their briefs, petitioners have yet to identify a single waste that they claim is misclassified under this provision. In briefs, they talk about waste managed at sulfur recovery facilities, but they don't identify any waste. It's not the spent sulfuric acid because that's an ingredient. That's not subject to this provision. So they haven't identified any injury, and they haven't identified any way in which the regulation misregulates. Secondly, this provision applies to as Judge Sintel was getting at in his questions, the only thing this provision that we're talking about does is that it requires that if you take a material and you transfer it to someone else, a secondary material, you have to get a determination from EPA that it's not a waste. And that's a reasonable provision, and EPA has made such determinations. You can get them either on a case-by-case basis, or you can get them on a categorical basis. They made a couple of them in the rule. There are other rules pending. And the record does show that many of the problems associated with recycling management have to do with transfers and mismanagement during transfer. And there is less control. If a generator takes the material and reuses it itself, it seems clear that it's a valuable material. But if it's transferred to someone else, that's somewhat different. Nevertheless, an EPA has taken the precaution of requiring that the person wanting to combust the waste or the generator or whoever chooses to do so, comes to EPA and gets a determination. And that's reasonable under the statute given the history of issues and problems associated with such transfers. I just want to make a quick point. The question being asked here is when does combustion constitute disposal? These are materials that are going to be destroyed by combustion. In some cases, where it meets legitimacy criteria, where the material has fuel value, where it's being managed in a proper way, where it's not contaminated, EPA has determined that that's recycling, that those products are fuels, and that they should be managed as product fuels. In other cases, something is transferred that doesn't meet those criteria and combustion is disposal. So it's not the transfer itself that constitutes disposal. What constitutes disposal is the combustion if it is a solid waste. Unless the court has any questions, I think we should end. Okay, thank you. Good morning  May it please the court, Seth Johnson, for Environmental Intervenors. The issue here is whether discard has ever occurred. I think that's a very important point of agreement. If a secondary material has been indisputably discarded, industry seems to agree that transferring it from one firm to another doesn't make it not discarded. So the question here is whether EPA set up a lawful approach to determining whether a firm to firm transfer here constitutes discard. Industry hasn't shown that there's any conflict between the scheme established for those materials and RCRA or this court's case law. I just want to add one quick citation to what my colleague Mr. Rave said. Industry claims that EPA can't even establish a process for transferred secondary materials to avoid discard status, but this court has already upheld EPA's authority to establish an exemption process like this where the material wouldn't be found to be discarded here too so long as the conditions EPA established are met. The material won't be found to be discarded. It's a flexible process. Industry doesn't like how it's set up, but it doesn't  it's set up. Industry also makes a lot of policy arguments. They're not relevant because Congress is the one that sets the policy and it said it in RCRA and the Clean Air Act. If you burn waste for any purpose, you've got to meet those standards. Those standards are two decades overdue and they'll reduce pollution for millions of people. They're based on what sources have achieved so they're strong but achievable. Industry hasn't achieved  yet. They're based on the most protective standards. As a result, many sources can be classified as area source boilers. Those standards only lead to 2% reduction in particulate matter, carbon dioxide  They only lead to 2% reduction. If the court has no questions. Thank you. Did Mr. Petitioner have any time left? You can each take one minute if you would like it. Thank you, Your Honor. Turning to the questions again that you were posing, the example that we want to focus on is a secondary material that meets the legitimacy criteria that is transferred to a third party for the same use that the onsite generator would be putting it to use for. And we don't think that there's a basis in the record or the law for EPA distinguishing between those two situations or the situation where if I'm a generator and I'm transferring secondary material to a third party for use as an ingredient and it meets the legitimacy criteria and we don't think that in that situation the transfer alone where all of the legitimacy criteria are being met qualifies as the plain meaning of the word discard under the statute. All right. Thank you. Mr. Knight? I actually have a question for you. Mr. Knight? Yes. On sludge, right? Yes. You're sludge. Yes, I am. Okay. Sorry about that. That's your issue, right? It is my issue. Okay. Mr. Rave cited 6903 26A. Sludge means any solid, semi-solid, et cetera generated from municipal, commercial, or industrial waste water treatment plant. That's correct. Right. And 6903 27, which defines solid waste, expressly excludes No, wait. Before you go there, you were telling me the distinction before, when I was asking what's the language in the statute about treatment plants, is that well, factory treatment plants would be considered not municipal ones. This says municipal, commercial, or industrial waste water treatment plants. Yes, these are two different definitions that are used for different purposes within the RECRA framework. Or any other such waste treatment having similar characteristics? Yes. So, okay, what's the difference? These are two different definitions that have different purposes within the RECRA framework. 26A, which defines sludge, clearly includes sewage sludge because sewage sludge comes from a municipal waste water treatment plant. However, the defined term sludge is used for two purposes. 6982G directs the administrator to conduct studies of sound sludge landfilling practices and other alternative uses, including energy recovery. So, it makes perfect sense for the Congress to have included sewage sludge and municipal waste water treatment plants within the definition of sludge under 26A, while at the same time excluding domestic sewage and sewage sludge from that definition of solid waste in 26A. Thank you. Thank you. We're done, right? Yeah. Okay. The case is submitted.
judges: Tatel, Wilkins, Sentelle